

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

―――――――――――――――――――――――――――――――――

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

November 8, 2022

**VIA ECF**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      **Re:** *United States v. Damion Clarke,* **04 Cr. 1075 (KMK)**

Dear Judge Karas:

The Government respectfully submits this letter in advance of sentencing in this case, currently scheduled for Tuesday, November 15, 2022, at 2:00 p.m.  Nearly two decades ago, the defendant Damion Clarke pled guilty to distribution and possession with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 812, 84l(a)(l), and 841(b)(l)(B), and possession of a firearm with an obliterated serial number, in violation of Title 18, United States Code, Section 922(k).

For the reasons explained below, the Government submits that a below Guidelines sentence that includes a period of imprisonment of no less than 41 months would be sufficient but not greater than necessary to serve the objectives of federal sentencing.  While this sentence is lower than the Stipulated Guidelines Range as defined in the Plea Agreement signed by the defendant on April 27, 2005 (the "Plea Agreement") and the updated Guidelines range calculated by the United States Probation Office ("Probation"), the sentence aligns with the individual circumstances of the defendant today, the nature and characteristics of the offense, and the defendant's nearly twenty-year flight from justice.

## I.    Offense Conduct and Procedural History

On or about March 14, 2004, at approximately 5:00 p.m., Damion Clarke, the defendant, approached David Green, the defendant's uncle, in the Pathmark parking lot in Mount Vernon New York, and punched Mr. Green in the left eye.  (PSR ¶ 12.)[1]  Shortly thereafter, the defendant approached Mr. Greene's vehicle and threatened him, stating "you better pay me my money, or I am going to shoot up your truck." (PSR ¶ 13.)  On or about March 18, 2004, Mr. Green's car was vandalized.  All four tires were slashed and the body of the car was scratched.  The next day, fearing for his safety, Mr. Green filed an incident report with the Mount Vernon Police Department ("MVPD"). (PSR ¶¶ 12, 14.) A warrant was issued for the defendant's arrest, and on March 23,

――――――――――――――――――――

[1] References to the Presentence Investigation Report ("PSR") in this memorandum refer to the updated PSR issued by the Probation on August 26, 2022.

2004, the defendant was arrested after exiting a purple Honda Accord (the "Vehicle"). (PSR ¶¶ 14-15.)

The Vehicle itself was impounded. (PSR ¶ 16.) While conducting an inventory search of the Vehicle, MVPD officers uncovered 23 clear, plastic bags containing crack cocaine and a Ruger 9-millimeter semi-automatic handgun with a defaced serial number inside of a hidden compartment located in the back panel of the Vehicle's passenger seat. (PSR ¶¶ 18-19.) The hidden compartment was opened by a hydraulic pump connected to a remote switch located at the Vehicle's brake pedal. (PSR ¶ 18.)

The defendant was charged by federal complaint (the "Complaint") on or about August 30, 2004, of possession of a firearm with a defaced serial number, in violation of Title 18, United States Code, Section 922(k) and possession with intent to distribute 5 grams or more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 812, 841(a)(1) and 841(b)(1)(B). (Dkt. No. 2.) The defendant was subsequently charged by indictment (the "Indictment") on October 15, 2005, of the violations charged in the Complaint, as well as one count of possession of a weapon in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c). (PSR ¶ 4.)

On or about April 27, 2005, the defendant entered into an agreement with the Government to plead guilty to Counts One and Two of the Indictment—i.e., possession of a firearm with a defaced serial number, in violation of Title 18, United States Code, Section 922(k), and possession with intent to distribute 5 grams or more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 812, 841(a)(1) and 841(b)(1)(B) (the "Plea Agreement"). In exchange, the Government would move to dismiss Count Three. (PSR ¶ 5.) On the same day, the defendant pled guilty before the Honorable Lisa Margaret Smith, United States Magistrate Judge for the Southern District of New York. (Dkt. No. 15.) On or about June 10, 2005, the Honorable Stephen C. Robinson, United States District Court Judge for the Southern District of New York, accepted the defendant's plea allocution.

## II.   The Defendant's Disappearance and Seventeen-Year Flight from Justice

Following his plea allocution, the defendant was permitted to remain at liberty while under the supervision of Pre-Trial Services. The defendant used that opportunity to flee. Sometime between June 3, 2005—the last date that the defendant reported to Pretrial Services—and a home visit conducted by Pretrial Services on June 15, 2005, the defendant disappeared. On June 16, 2005, Judge Smith issued an arrest warrant for the defendant. On August 16, 2007, Shonta R. Green and Dionte C. Perkins—the people whose support and trust in the defendant allowed him to avoid detention in the first place—were left jointly and severally liable for the $50,000 used to secure the defendant's bail.

In March 2018, the United States Marshals Service received new information suggesting that the defendant was residing in Jamaica. Multiple government agencies then began the years-long extradition process to return the defendant to the United States. On or about December 7, 2021, the Government swore to an affidavit before the Honorable Judith C. McCarthy to request the defendant's extradition.

On or about May 24, 2022, a warrant for committal was issued for the defendant by Jamaican officials. (Ex. A, Warrant of Minister for Extradition of Fugitive.) The Government

understands that the defendant consented to extradition.  Accordingly, on or about June 14, 2022, a magistrate judge ordered the defendant to be extradited to the United States, Ex. A, and, on or about July 8, 2022, the defendant arrived in the United States.  On July 11, 2022, the defendant appeared for the first time in almost two decades before Judge McCarthy for a status conference in this matter.

In the nearly seventeen years between the date that Judge Smith issued the defendant's arrest warrant and the date he surrendered to the Jamaican authorities, the defendant never contacted any government agency to accept responsibility for his crimes or his flight, to offer an explanation or excuse for his actions, or to indicate any remorse for his actions whatsoever.

### III.   The Plea Agreement and the Defendant's Sentencing Guidelines Range

The Plea Agreement calculated the defendant's offense level and criminal history under the United States Sentencing Guidelines (the "Sentencing Guidelines") effective November 1, 2004.  However, the Sentencing Guidelines state that "the court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11.  Accordingly, Probation's Presentence Investigation Report ("PSR") dated August 26, 2022, calculated the defendant's offense level and criminal history under the United States Sentencing Guidelines (the "Sentencing Guidelines") using the 2021 Guidelines Manual.  (PSR ¶¶ 29-46.)

#### A.   The Sentencing Guidelines Range in the PSR

The PSR calculated the defendant's Guidelines Range as 57-71 months' imprisonment. Specifically, the defendant was given a base level offense of 20 because the offense involved more than 19 grams of cocaine base.  (PSR ¶ 31.)  The defendant received a two-level increase because the offense involved possession of a firearm.  (PSR ¶ 32.)  He received an additional two-level increase for his willful obstruction of justice and evasion of law enforcement for almost two decades. (PSR ¶ 32.)  Finally, the PSR notes that the defendant has forfeited any reduction for acceptance of responsibility as described in the Plea Agreement, which brings his total offense level to 24. (PSR ¶ 38.)  Counts One and Two are grouped into Group 1 for guideline calculation purposes because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other count.  (PSR ¶ 29.)  Here, Count One has the higher calculated offense level and is used as the offense level for Group 1.  (PSR ¶¶ 29-39.) The defendant does not have a criminal history, which places him in Criminal History Category I. The resulting Guidelines range calculated in the PSR ("PSR Guidelines Range") for Group 1 is 51 to 63 months' imprisonment. (PSR ¶ 91.)

#### B.   The Sentencing Guidelines Calculation Applying Powder Cocaine Weights

The defendant's Guidelines Range would be lower if the sentencing Guidelines for powder cocaine weights were used.  Like the calculation above, Counts One and Two are grouped for guideline calculation purposes because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other count. The offense level for Group 1 is determined for the highest offense level of the counts.  (U.S.S.G. § 3D1.2(c).

Count One Calculation:  For Count One, when using the Guidelines for powder cocaine, the defendant would receive a base offense level of 12 because the offense involved 19 grams of

powder cocaine.  U.S.S.G. § 2D1.1(a)(5), (c)(14).  The defendant would receive a two-level increase because the offense involved possession of a firearm.  *Id*. at § 2D1.1(b)(1). He would also receive an additional two-level increase for his willful obstruction of justice.  *Id*. at § 3C1.1. Assuming the defendant would not receive any reduction for acceptance of responsibility, his total offense level for Count One would be 16.

Count Two Calculation:  For Count Two, the defendant receives a base offense level of 12 because he unlawfully possessed a firearm.  He receives a four-level increase because the firearm had an altered or obliterated serial number, U.S.S.G. § 2K2.1(b)(4)(B), and a two-level increase because the firearm was possessed in connection with another felony offense.  *Id*. at § 2K2.1(b)(6)(B).  The defendant also receives an additional two-level increase for his willful obstruction of justice.  *Id*. at § 3C1.1.  Assuming the defendant would not receive any reduction for acceptance of responsibility, his total offense level for Count Two is 20.

Because the offense level for Count Two is higher than Count One, the calculation for Count Two would constitute the offense level for Group 1.  U.S.S.G. § 3D1.2(c).  Given the defendant's Criminal History Category of I, the resulting Guidelines range for Group 1 would be 33 to 41 months' imprisonment.

## IV.   **The Rule of Specialty May Bar a Sentence That Deviates from the Defendant's Guilty Plea**

The Government obtained the defendant's extradition pursuant to the United States-Jamaican Extradition Treaty (the "Treaty"),[2] which creates a legally binding obligation to abide by the provisions of the Treaty, including a certain obligation governed by Article XIV that is commonly referred to as the Rule of Specialty.  Essentially, barring a handful of exceptions, the defendant may not be sentenced for an offense other than that for which extradition is granted. Specifically, Article XIV states that the defendant "may only be detained, tried, or punished in [the United States] for the offense for which extradition is granted, or . . . in the case of extradition pursuant to Article XV, any lesser offence disclosed by the facts upon which the request is based." Treaty at Article XIV(1)(a).  Article XV provides a mechanism for "simplified extradition" if "the person sought agrees in writing to extradition after personally being advised by judge or competent magistrate of his right to further extradition proceeding."  *Id*. at Article XV.  While the Government understands that the defendant consented to extradition, the Government has not received any documentation that confirms that the specific requirements of the Treaty have been satisfied, including a personal appearance before a competent judge to be advised of his rights.

Here, the defendant was extradited to be sentenced for a violation of Title 21, United States Code Sections 812, 841(a)(1) and 841(b)(1)(B).  However, the PSR calculates Count One of the Indictment as if the defendant pled guilty to a violation of a lesser-included offense, namely 21 U.S.C. § 841(b)(1)(C).  (PSR at 1, ¶¶ 90, 93, 99.)  This was done in recognition of the Fair Sentencing Act of 2010, which lowered the penalties for those charged with distribution or possession with intent to distribute crack cocaine.  (PSR at n.1.)  The Fair Sentencing Act also removed the mandatory minimum five-year sentence to individuals like the defendant who plead guilty to less than 28 grams.

The Government agrees with Probation and the defendant that the Fair Sentencing Act applies in this instance and that no mandatory minimum can or should be imposed.  However, a

---

[2] A copy of the Treaty is attached as Exhibit B.

sentence imposed upon the defendant for a violation of 21 U.S.C. § 841(b)(1)(C) as described in the PSR may violate the terms of the defendant's extradition from Jamaica and could be unlawful. Accordingly, for avoidance of doubt, the ultimate judgment to be imposed for Count One should be for "a violation of 21 U.S.C. § 841(b)(1)(B) as amended by the Fair Sentencing Act" to comply with the terms of the defendant's extradition.

## V.    A Sentence Within the Calculated Guidelines Range is Fair and Appropriate

### A.    Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although the Sentencing Guidelines are advisory and not mandatory, they are nonetheless "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007).  It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing).  Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a):  (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims."  18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.  In determining the appropriate sentence, Section 3553(a) directs judges to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.    Discussion

#### i.  Section 3353(a) Factors

The Government respectfully submits that a below Guidelines sentence that includes a period of imprisonment of no less than 41 months would be sufficient but not greater than

necessary to satisfy the purposes of sentencing under Section 3553(a). Such a sentence would reflect the nature and seriousness of the offense, promote respect for the law, and afford adequate deterrence to the public and to the defendant for both the charged acts and his nearly twenty-year flight from justice. Such a sentence also would account for the powder-to-cocaine base disparity in the calculated Guidelines sentence in the PSR.

*First*, the proposed sentence is appropriate given the nature and seriousness of the offense. When officers searched the defendant's Vehicle, they didn't simply find 19 grams of crack cocaine. They found 23 separate, clear bags of crack cocaine in the defendant's Vehicle—the same Vehicle where the defendant hid a defaced Ruger 9-millimeter semi-automatic handgun in a secret compartment that could only be accessed by using a remote switch located at the Vehicle's brake pedal. The manner of drugs' packaging in such close proximity to a "trap" within the Vehicle make the defendant's motives clear—the defendant was in the business of making multiple sales of crack cocaine and was prepared to protect his stash with violence.

*Second*, the need for general and specific deterrence requires a judgement that includes a significant term of imprisonment because the defendant's actions have shown a true contempt for the law and the Court. Originally, in addition to Counts One and Two, the defendant was indicted for possession of a weapon in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). Section 924(c) carries with it a mandatory minimum five-year sentence to be served consecutively to any sentence that the defendant would have received for the first two Counts. In exchange for accepting responsibility for Counts One and Two, the defendant was released from the possibility of a significantly higher sentence than the one he faced when he pled guilty in 2005. But the defendant didn't take responsibility for his actions. He fled. In doing so, he showed contempt for the leniency that was provided and for the Court by taking advantage of the trust bestowed on him by allowing him to remain at liberty following his plea allocution. In the intervening two decades, the defendant has taken no steps to take responsibility for his actions or shown the slightest amount of remorse.

In response to the defendant's actions, multiple law enforcement and state agencies have had to pour significant resources in bringing the defendant to justice. For as long the defendant has been at liberty, the United States Marshals Service and agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives have dedicated resources to try to determine the defendant's location. When the defendant was located in Jamaica in 2018, the Government, members of the Department of Justice's Office of International Affairs, and the State Department then spent years working through the process of extradition. Any sentence that does not include a significant term of imprisonment would be tantamount to an endorsement of the defendant's actions and would send a signal to other defendants that fleeing the jurisdiction is a viable alternative to remaining and facing the consequences of their actions.

### i.  *Mitigating Factors*

*First*, the PSR indicates that, since his flight, the defendant has generally maintained employment and does not appear to have committed additional crimes. To be sure, the defendant should be punished for his crimes and should be held accountable for his nearly twenty-year flight from prosecution. However, in the interim, it does appear that the defendant has become an otherwise law-abiding citizen, a business-owner, and a father of minor children for whom he provides financial support. The Court should consider such factors in its sentencing. *Gall v. United States*, 552 U.S. 38 (2007).

*Second,* as the Court is aware, the U.S. Department of Justice provided public testimony in support of the Eliminating a Quantifiably Unjust Application of the Law Act ("EQUAL Act of 2021").  This proposed legislation would eliminate the powder-to-cocaine base sentencing disparity in 21 U.S.C. §§ 841 and 960.  Although the Department supports elimination of the powder-to-cocaine base disparity, until legislation to that effect is passed, the current statutory and guidelines provisions remain in effect.  In this case, the amount of cocaine base attributable to the defendant is approximately 19 grams, which results in a current base offense level of 24, resulting in the PSR Guidelines Range of 51 to 63 months' imprisonment.  If the powder cocaine Guidelines were instead applied to the same amount of cocaine base, the base offense level would be 12.  As explained in further detail above, Count Two would then become the count with the highest offense level, and would result in a Guidelines range of 33 to 41 months' imprisonment.  The Court can and should, consistent with the law and current sentencing framework, consider the powder-to-cocaine base disparity in assessing the Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007); *United States v. Cavera*, 550 F.3d 180, 191-92 (2d Cir. 2008) (en banc).

## VI.   Conclusion

For the reasons explained above, the Government respectfully requests that the Court impose a substantial prison sentence below the Calculated Guidelines Range but not less than 41 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the objectives of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/ _____
Kaiya Arroyo
Assistant United States Attorney
Tel: (914) 993-1919

Cc:   Todd Spodeck, esq. (via CM/ECF)